IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADRIAN MARTINEZ,<br><br>　　　　　　　　　Petitioner,<br><br>　　　vs.<br><br>DON WHITMIRE, Acting Hospital<br>Administrator;<br><br>　　　　　　　　　Respondent. | **8:20CV271**<br><br><br>**MEMORANDUM AND ORDER** |
| ADRIAN MARTINEZ,<br><br>　　　　　　　　　Petitioner,<br><br>　　　vs.<br><br>DON WHITMIRE, Acting Hospital<br>Administrator;<br><br>　　　　　　　　　Respondent. | **8:20CV272**<br><br><br>**MEMORANDUM AND ORDER** |

These consolidated cases[1] are before the Court on a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, two motions for evidentiary hearings (the "Discovery Motions"), Filing No. 80 and Filing No. 89,[2] and two motions seeking to progress the case which this Court construes as motions for status (the "Motions for Status"), Filing No. 92 and Filing No. 93, filed by Petitioner Adrian Martinez ("Petitioner") in support of his amended habeas corpus petition at Filing No. 4, Filing No. 13, and Filing No. 14 of Case

---

[1] On the Court's own motion, Case No. 8:20CV271 and Case No. 8:20CV272 were consolidated and Case No. 8:20CV271 was designated the lead case. Filing No. 8, Case No. 8:20CV271.

[2] All citations to the record are to the lead case, Case No. 8:20CV271, unless otherwise noted.

No. 8:20CV271 and Filing No. 15 of Case No. 8:20CV272 (collectively the "Amended Petition").[3]

The Motions for Status are granted.  The status of this matter is as follows: This Court previously noted on August 18, 2022, that briefing on the Petition was complete and the Petition was ripe for disposition.  *See* Filing No. 87 at 2.  At that time Petitioner's first Discovery Motion, Filing No. 80, filed on June 10, 2022, was already pending. Petitioner then filed a second discovery motion on January 11, 2023.  Filing No. 89. Briefing is complete on the Discovery Motions and the matter is ripe for disposition.

For the reasons that follow, the Discovery Motions are denied, and the Petition shall be denied and dismissed with prejudice.[4]

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

Petitioner is a patient currently committed to the Norfolk Regional Center in Norfolk, Nebraska, pursuant to Nebraska's Sex Offender Commitment Act, Neb. Rev. Stat. §§ 71-1201 to 71-1226 ("SOCA").  *See* Filing No. 13 at 1; Filing No. 30-3 at 46–49. The Mental Health Board of the Fourth Judicial District for Douglas County, Nebraska ("Mental Health Board") found that Petitioner is a dangerous sex offender as defined by Nebraska law, has a mental illness/personality disorder, is likely to engage in repeat acts of sexual violence, is substantially unable to control his behavior, and that neither voluntary hospitalization nor other treatment alternatives less restrictive of his liberty than a Mental Health Board ordered treatment disposition would suffice to prevent the harm

---

[3] Filing No. 15 of Case No. 8:20CV272 is identical to Filing No. 13 of the lead case, Case No. 8:20CV271.

[4] The Court notes that Petitioner also appears to move for counsel to assist with discovery and to support him in arguing the merits of his claims.  Filing No. 13 at 16.  As the Discovery Motions shall be denied and the Petition shall be dismissed with prejudice, the motion for counsel is moot and shall not be addressed further in this order.

as described in Neb. Rev. Stat. § 83-174.01 (the "Commitment Order"). Filing No. 30-3 at 46–49. Petitioner remains committed pursuant to the Commitment Order.

## A. Factual Background

In 1988, Petitioner was charged in Texas with one count of burglary of habitation and one count of sexual assault. Filing No. 28-1 at 3. Petitioner pled guilty to the charge of "burglary of habitation" and the sexual assault charge was dropped. *Id.* Petitioner's conviction required him to register with the Texas Sex Offender Registry. *Id.* at 3–4. Subsequently, Petitioner moved to Nebraska, but did not register as a sex offender due to his Texas conviction. As a result, Petitioner was convicted in Nebraska for violating the Sex Offender Registration Act, *see* Neb. Rev. Stat. § 29-4001 *et seq*. (Reissue 2016), and in particular Neb. Rev. Stat. § 29-4003(1)(a)(iv) (Supp. 2019), which requires registration in Nebraska by "any person who on or after January 1, 1997 . . . [e]nters the state and is required to register as a sex offender under the laws of another village, town, city, state, territory, commonwealth, or other jurisdiction of the United States." *See* Filing No. 28-8 at 1–2.

## B. Petitioner's 2018 SOCA Commitment

### 1. Petition for hearing under SOCA

On December 21, 2017, pursuant to Neb. Rev. Stat. § 71-1205, Douglas County Deputy Attorney, Eric Wells ("County Attorney"), filed a petition before the Mental Health Board alleging that Petitioner qualifies as a dangerous sex offender under SOCA, and that neither voluntary hospitalization nor less restrictive treatment than Board ordered treatment disposition would suffice to prevent the harm described in Neb. Rev. Stat. § 83-174.01(2). Filing No. 30-3 at 1–3. At the time, Petitioner was in the custody of the Omaha

Correctional Center—a facility of the Nebraska Department of Correctional Services ("NDCS"). *Id.*

A December 18, 2017, Psychological Evaluation performed by Dr. Jeff Melvin, Ph.D. ("Dr. Melvin") was attached to the petition filed by the County Attorney.[5] *Id.* at 6–14. Dr. Melvin opined that Petitioner met the criteria for a Dangerous Sex Offender under Nebraska law and found that the best option and least restrictive method for Petitioner's treatment was inpatient. *Id.*

### 2. Mental Health Board hearing

On April 26, 2018, the Mental Health Board held a hearing to determine whether "there is clear and convincing evidence that [Petitioner] is a dangerous sex offender as alleged in the petition." Filing No. 30-3 at 46. Petitioner, his counsel, and the County Attorney were all present for the hearing. *Id.* Petitioner formally denied the allegations in the petition seeking his commitment. *Id.*

In the Commitment Order, the Mental Health Board found that Petitioner is a dangerous sex offender; that he suffered from a mental illness/personality disorder, specifically exhibitionism, anxiety disorder unspecified, and antisocial personality disorder; and that Petitioner was likely to engage in repeat acts of sexual violence, had been convicted of one or more sex offenses, and was substantially unable to control his criminal behavior. *Id.* at 46–47. The Mental Health Board further found that Petitioner is mentally ill and a dangerous person and neither voluntary hospitalization nor other treatment alternatives less restrictive of his liberty than a Mental Health Board ordered

---

[5] Dr. Melvin's evaluation took place because Petitioner met the criteria under Neb. Rev. Stat. § 83-174.02 for a mandatory evaluation prior to his discharge because he was convicted of "Sexual Offender Registry Act Violation, 2nd Offense" on February 22, 2017, as well as a prior "Sexual Offender Registry Act Violation" on September 30, 2013, in Douglas County, Nebraska. Filing No. 30-3 at 6.

4

treatment disposition would suffice to prevent the substantial risk of harm as described in Neb. Rev. Stat. §§ 71-1209 and 83-174.01. *Id.* at 47. Finally, the Mental Health Board ordered Petitioner be placed in the custody of the Nebraska Department of Health and Human Services for appropriate treatment. *Id.*

Following entry of the Commitment Order, it appears Petitioner informed his counsel that he sought to proceed pro se going forward. *See* Filing No. 30-4 at 3. Specifically, in a letter dated May 15, 2018, Petitioner's counsel Augustine Osuala ("Osuala"), Assistant Douglas County Public Defender, indicated that Petitioner informed her at the April 2018 hearing before the Mental Health Board that he no longer sought her representation. *Id.* Osuala informed Petitioner that he was entitled to appeal the Commitment Order and that he had 30 days from April 27, 2018, to file in district court his Notice of Appeal and Affidavit to Proceed in Forma Pauperis if he wished to do so. *Id.*

Osuala sent a second letter to Petitioner dated October 24, 2018, indicating Petitioner had attempted to communicate with her recently and noting that if Petitioner no longer wished to proceed pro se to contact her, otherwise she intended to withdraw from his representation. Filing No. 30-4 at 2. While it is unclear if or when Osuala withdrew from Petitioner's representation, on February 14, 2019, the Mental Health Board granted a request by Jordan E. Holst, Assistant Public Defender, to withdraw a motion for a review hearing from the Mental Health Board. Filing No. 30-4 at 14.

Petitioner never appealed the Commitment Order to the state district court. *See* Filing No. 26 at 2 ("[N]o such appeal to the Douglas County District Court up to the Nebraska Supreme Court 'exists.'").

### C. State Habeas Cases

#### 1. First state habeas

On July 23, 2018, Petitioner filed a petition for writ of habeas corpus in the District Court of Madison County, Nebraska (the "2018 State Habeas"). Filing No. 28-1 at 2–7. Petitioner claimed that he was being "unlawfully deprived of his liberty in violation of his rights guaranteed to him by the Fourth (4th), Fifth (5th), Sixth (6th) and Fourteenth (14th) Amendments to the United States Constitution, Article 1, sections 3, 11, and 12 of the Nebraska Constitution, and [SOCA]." Id. at 2. The crux of the 2018 State Habeas was that "[t]he Mental Health Board erroneously used incorrect information to support their finding that Petitioner was a dangerous sex offender under Neb. Rev. Stat. § 83-174.01." Id. at 4.

Petitioner alleged that his due process rights were violated due to being seized and unlawfully detained without proper statutory authority and that the continued detention and deprivation of Petitioner's liberty was unlawful and in contravention of Neb. Rev. Stat. § 29-4003. He claimed that the following errors were committed:

> In order to be considered a dangerous sex offender under Neb. Rev. Stat. § 83-174.01, the individual must previously be convicted of a sex offense listed in Neb. Rev. Stat. § 29-4003. Petitioner has never been convicted of a sex offense identified under Neb. Rev. Stat. § 29-4003.
> . . . .
> The Mental Health Board erroneously found that Petitioner had been convicted of a sexual assault crime in Texas. There is no comparable Nebraska offense for Petitioner's Texas offense identified under Neb. Rev. Stat. § 29-4003.
> . . . .
> Petitioner does not meet the statutory requirement for a dangerous sex offender under Neb. Rev. Stat. § 83-174.01 and therefore, is not subject to civil commitment under the Sex Offender Commitment Act.

Id. at 5–6. Of note, Petitioner did not allege ineffective assistance of counsel.

Respondents filed a motion to quash, which was granted. *Id.* at 15–19. In granting the motion to quash, the state district court explained that, unlike federal habeas corpus, in Nebraska, habeas corpus is considered a collateral attack on a judgment of conviction. *Id.* (quoting *Sanders v. Frakes*, 888 N.W.2d 514, 520 (Neb. 2016)). The court further noted that a collateral attack may only proceed when a judgment is void—meaning that the court issuing the judgment did not have jurisdiction (subject matter or personal) to do so—not merely when a judgment is erroneous. *Id.* at 17–18.

With those principles in mind, the court reviewed the petition and noted that Petitioner's entire argument amounted to a collateral attack of the Mental Health Board's findings and decision, but that Petitioner made no jurisdictional arguments. *Id.* at 17. Because Petitioner did not allege that the Mental Health Board lacked jurisdiction, and instead argued that its decision was erroneous as contrary to law, the court sustained the motion to quash and dismissed the 2018 State Habeas. *Id.* at 18.

### 2. Second state habeas

On January 31, 2019, Petitioner filed a "Successive Petition of Writ of Habeas Corpus" in the Madison County District Court (the "2019 State Habeas"). Filing No. 28-2 at 2–11. As in the 2018 State Habeas, the respondent again filed a motion to quash for failure to state a claim upon which relief can be granted. *Id.* at 22–23.

The district court granted the motion to quash, noting that Petitioner made essentially the same general arguments in the 2019 State Habeas as in the 2018 State Habeas but was now attempting, albeit unsuccessfully, to argue jurisdictional implications, submitting that the Mental Health Board's actions were void of authority to act. *Id.* at 27. The court summarized Petitioner's jurisdictional arguments as follows: (1) that Petitioner

7

has never been convicted in Nebraska of any of the sex offenses listed in Neb. Rev. Stat. § 29-4003 to classify him as a dangerous sex offender under Neb. Rev. Stat. § 83-174.01, and, consequently, the Mental Health Board "had no statutory authority to initiate the civil commitment proceedings against him, making any judgment rendered by the Board void," and (2) that the State of Nebraska did not have jurisdiction to conduct the civil commitment evaluation under Neb. Rev. Stat. § 83-174.02 (which was used to refer Petitioner to the Mental Health Board for subsequent civil commitment) and that the sentencing order did not contain a written notification form that a civil commitment evaluation was required prior to Petitioner's release from incarceration. *Id.* at 27–28.

In addressing Petitioner's first jurisdictional argument, the court noted that Petitioner's argument confused the Mental Health Board's subject matter jurisdiction with fact finding, explaining that:

> Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved." *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 352 (2017). The [Mental Health] Board had the jurisdiction and obligation to determine whether there was sufficient evidence to demonstrate the Petitioner was a dangerous sex offender as alleged. It is the disagreement with that "decision" the Petitioner takes true issue with and this is an attack on the "judgment" of the [Mental Health] Board, not jurisdiction of the [Mental Health] Board. As such, this is an impermissible collateral attack for which habeas corpus is not designed nor intended.

*Id.* at 28.

In relation to his second argument, the court explained that there is no language in Neb. Rev. Stat. § 83-174.02 that is jurisdictional with respect to a proceeding under SOCA, and "[t]herefore, the Mental Health Board's jurisdiction is not dependent upon a written notice that a civil commitment evaluation was given at time of sentencing." *Id.* at

29 (citing *D.H. v. Lancaster County Mental Health Bd. (In re D.H.)*, 797 N.W.2d 263, 269 (Neb. 2011)). And finally, the court noted that Neb. Rev. Stat. § 71-959 "does not provide an independent remedy or cause of action other than through habeas corpus or appeal," indicating that there was no other available process in the Nebraska Courts in which Petitioner could bring his claims. *Id*.

As in the 2018 State Habeas, Petitioner did not raise any ineffective assistance of counsel claims.

### 3. 2019 state habeas appeal

On July 17, 2019, Petitioner filed a Notice of Appeal, *id.* at 31–32, and on August 21, 2019, he filed his appellate brief, including exhibits and arguments imbedded within the exhibits, with the Nebraska Court of Appeals, Filing No. 28-4.[6] The state appellate court provided a summary of Petitioner's assignments of error addressed in its decision, noting that because Petitioner assigned multiple errors but failed to specifically argue all of his assigned errors, the court only addressed the following two arguments:

> that the district court erred in (1) granting the motion to quash because the mental health board did not have jurisdiction and lacked a legal basis to commit [Petitioner] and (2) failing to declare the board's sentence of commitment void due to its failure to identify the sexual offense of which [Petitioner] was convicted that justified his commitment.

Filing No. 28-8 at 2–3.

In affirming the district court's findings, the appellate court found that Petitioner was not attacking the Mental Health Board's jurisdiction, but rather

---

[6] Of note, Petitioner did not refer to any Amendments to the U.S. Constitution in his Table of Authorities in his initial appellate brief, nor in his reply brief. *See* Filing No. 28-4 at 3–5; Filing No. 28-7 at 3–7. Other than the same generalized statement that he was seeking release from "unlawful state custody and restraint in violation of his constitutional rights under the 4th, 5th, 6th, and 14th Amendment[s]," Filing No. 28-4 at 6, Petitioner failed to expand on any federal law claim.

attempting to collaterally challenge the Mental Health Board's merits determination. It explained:

> [Petitioner] argues that the mental health board did not have jurisdiction to commit him because the crime for which he was convicted in Nebraska does not fit under the definition of "sex offense."  In doing so, [Petitioner] seeks to collaterally attack the merits of the mental health board's determination that he is a dangerous sex offender.  Rather than being jurisdictional, [Petitioner's] argument addresses one of the elements the State was required to prove to show he was a dangerous sex offender.  See *In re Interest of K.W.*, 24 Neb. App. 619, 895 N.W.2d 721 (2017) (second element State was required to prove to show individual was dangerous sex offender under § 83-174.01(1) was that he had been convicted of at least one sex offense if he suffered from mental illness or at least two sex offenses if he suffered from personality disorder).  Again, [Petitioner] is asking this court to review the mental health board's determination that he was a dangerous sex offender on the merits, but, as noted above, a writ of habeas corpus may not be used as a substitute for an appeal.  See *Sanders v. Frakes*, 295 Neb. 374, 888 N.W.2d 514 (2016).  Because the board had jurisdiction to make that determination, its judgment was not void, and [Petitioner's] request constitutes an impermissible collateral attack.

*Id.* at 5.

The appellate court explained that Petitioner's second argument was not jurisdictional and instead contested the Mental Health Board's fact finding and constituted a "variation of his previous argument that his criminal conviction for failure to register under SORA does not qualify as a 'sex offense' for purposes of SOCA."  *Id.* at 6.  The court further noted that Petitioner could have challenged the Mental Health Board's findings on appeal but failed to do so.  *Id.* (citing Neb. Rev. Stat. § 71-1214, providing that "a subject committed under SOCA may appeal to the district court from a treatment order entered under § 71-1209").

Petitioner did not file a Petition for Further Review with the Nebraska Supreme Court.  *See* Filing No. 28-9 at 4 (Court of Appeals Docket Sheet shows no Petition for Further Review was filed).

10

**D.  Federal Habeas Cases**

On July 7, 2020, Petitioner filed multiple Petitions for Writ of Habeas Corpus before this Court seeking his release by challenging the Commitment Order.  *See* Filing No. 1, Case No. 8:20CV271 (the "Lead Case"); Filing No. 1, Case No. 8:20CV272 (the "Companion Case").  On October 8, 2020, Petitioner filed a third case. *See* Filing No. 1, Case No. 8:20CV408.  This Court subsequently consolidated the Lead Case with the Companion Case, and closed Case No. 8:20CV408.  *See* Filing No. 8.  Petitioner amended his Petition, and on April 12, 2021, the Court conducted an initial review of the Amended Petition, which the Court determined consisted of Filing Nos. 4, 13, and 14 of the Lead Case and Filing No. 15 of the Companion Case.  Filing No. 16.  Petitioner subsequently filed two motions seeking to amend his Amended Petition to add two additional claims (the "Supplemental Motions"), Filing Nos. 45 and 48, which the Court granted "to the extent that Petitioner will be allowed to amend and supplement his habeas petition to add the two claims identified in his [Supplemental Motions]."  Filing No. 53 at 5.

Upon review of the Amended Petition and Petitioner's Supplemental Motions, the Court determined that, liberally construed, Petitioner had stated the following potentially cognizable claims:

Claim One:  Petitioner is illegally confined in violation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments because the Mental Health Board lacked probable cause and jurisdiction to commit him as a dangerous sex offender under the Nebraska Sex Offender Commitment Act ("SOCA"), Neb.

Rev. Stat. §§ 71-1201 to 71-1226, because Petitioner has never been charged with, convicted of, or served a sentence for a sexually violent offense as defined in Neb. Rev. Stat. § 29-4003(1)(a)(i)(A)–(N).

Claim Two:    Petitioner's due process and equal protection rights under the Fifth and Fourteenth Amendments were violated because the Mental Health Board (1) refused to provide Petitioner with a certified hearing transcript needed for appellate and habeas corpus collateral attack purposes; (2) refused to provide Petitioner with mandatory and periodic post commitment review hearings; and (3) denied Petitioner his state created right to appointment of counsel under Neb. Rev. Stat. §§ 71-945, 71-946, and 71-959(9) in post commitment proceedings.

Claim Three:    Petitioner was denied his "constitutional right to competent counsel" in violation of the Sixth Amendment because counsel (1) failed to point out and challenge the State's presentation of false evidence of a 1988 Texas sexual assault conviction; (2) failed to file a notice of appeal or collaterally attack Petitioner's commitment via habeas corpus; (3) abandoned Petitioner's case; and (4) labored under conflicts of interest.

Claim Four:    Petitioner's rights under the Fourth and Fourteenth Amendments were violated because Douglas County Deputy Attorney Eric. W. Wells lacked probable cause to file a

12

petitioner under SOCA because Petitioner has no current or past conviction for a sexually violent offense as defined in Neb. Rev. Stat. § 29-4003(1)(a)(i)(A)–(N).

Claim Five:    Petitioner's rights under the Fourth, Fifth, and Fourteenth Amendments were violated because Douglas County Deputy Attorney Eric. W. Wells violated *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing and withholding material exculpatory documentary evidence at the April 26, 2018, SOCA hearing.

Filing No. 53 at 5–7.[7]

## II. OVERVIEW OF APPLICABLE LAW

Two strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default and (2) exhaustion as it specifically relates to civil commitment proceedings. The Court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Petitioner's claims.

## A. Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

---

[7] Upon review of the Amended Petition, this Court previously noted that Petitioner also alleged (1) the Norfolk Regional Center hospital authorities violated his Eighth and Fourteenth Amendment rights by refusing to seek Petitioner's release under Neb. Rev. Stat. §§ 71-1220 and 71-1221 in "[d]ereliction of duty . . . to protect the Petitioner's federally protected rights, due process rights, to remain free from 'unjustified', hence, illegal cruel and unusual punitive confinement" and (2) "[c]ivil and criminal conspiracies to obstruct the above constitutional/statutory rights and the equal protection to due course of justice under 42 USC [§] 1985(2)(3), 42 USC [§] 1986, 18 USCA [§§] 241, 242 etc." *See* Filing No. 16 at 3 n.3 (citing Filing No. 14 at 4, 46). This Court found those claims were not cognizable in a federal habeas corpus action as they did not challenge the legality of Petitioner's confinement but rather appeared to seek injunctive or monetary relief for ongoing violations of Petitioner's civil rights and dismissed them without prejudice to reassertion in an action brought pursuant to 42 U.S.C. § 1983. *Id.*

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)(i) there is an absence of available State corrective process; or

    (B)(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly[8] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454–55 (8th Cir. 2005).

---

[8] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501

15

U.S. 722, 750 (1991). A credible showing of actual innocence may also allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013), but to do so a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt,'" *Jennings v. United States*, 696 F.3d 759, 764–65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

**B. Exhaustion in Civil Commitment Proceedings**

The exhaustion requirement which applies to federal habeas petitioners challenging their conviction and/or sentence resulting from criminal proceedings also applies to civil commitment proceedings. *Carter v. Bickhaus*, 142 F. App'x 937, 938 (8th Cir. 2005) (unpublished). As such, a federal habeas petitioner must fully exhaust the necessary state procedures to challenge his civil commitment. *Id.*; *see also Ivey v. Sacriste*, No. 8:19CV153, 2020 WL 6158608, at *8 n.10 (D. Neb. Oct. 21, 2020); *Ivey v. Gibson*, No. 4:07CV3242, 2008 WL 5392136, at *4 n.7 (D. Neb. Dec. 19, 2008).

SOCA provides the procedure for exhausting a Mental Health Board's civil commitment decision:

> The subject of a petition or the county attorney may appeal a treatment order of the mental health board under section 71-1209 to the district court. Such appeals shall be de novo on the record. A final order of the district court may be appealed to the Court of Appeals in accordance with the procedure in criminal cases. The final judgment of the court shall be certified to and become a part of the records of the mental health board with respect to the subject.

16

Neb. Rev. Stat. § 71-1214.  The state court procedure under SOCA "is not a criminal appeal and postconviction proceeding" pursuant to Neb. Rev. Stat. § 29-3001, but it is "nearly identical state-court procedural due process." *Ivey,* 2020 WL 6158608, at *8; *Ivey,* 2008 WL 5392136, at *4.

### III.  DISCUSSION

All of Petitioner's claims aside from Claim Two challenge his commitment under the Commitment Order.  *See* Filing No. 53 at 5–7.  Claim Two appears, at least in part, to contain state law procedural challenges addressing post-commitment proceedings.  *See Id.* at 6 (summarizing Petitioner's Claim Two as denial of due process and equal protection by the Mental Health Board for failing to provide Petitioner with a certified hearing transcript or access to mandatory and periodic post-commitment review hearings and a denial of appointment of counsel in post-commitment proceedings under Nebraska state law).  Petitioner appears to seek an evidentiary hearing to further develop the claims[9] raised in his Petition.  Filing No. 13 at 16.

Upon review, none of Petitioner's claims set forth in Claims One, Three, Four, and Five may be considered on their merits as they are unexhausted and procedurally defaulted.  Claim Two is not a cognizable claim as it seeks review of purely state-law questions and/or is not an actual claim but instead is an argument in support of excusing his failure to exhaust Claims One, Three, Four, and Five.  Finally, Petitioner is not entitled to an evidentiary hearing as he failed to meet the standards for excusing the procedural default of any of his claims.

---

[9] As noted by Respondent, *see* Filing No. 90, Petitioner never states precisely which claim or claims in his Petition he seeks an evidentiary hearing to develop.  As such, this Court shall consider all claims when addressing the Discovery Motions.

**A.  Claim Two**

In Claim Two, Petitioner asserts due process and equal protection violations under the Fifth and Fourteenth Amendments, alleging that the Mental Health Board refused to provide him with a certified hearing transcript (which he alleges he needed for his direct appeal and state habeas petitions) and refused to provide him with mandatory and periodic post-commitment review hearings and appointed counsel as guaranteed by Neb. Rev. Stat. §§ 71-945, 71-946, and 71-959(9) in post-commitment proceedings.  Filing No. 14 at 3.

If Petitioner only seeks a determination of state law in Claim Two, issues purely of state law are not proper subjects of federal habeas relief, *see* 28 U.S.C. § 2254(a), and are therefore subject to dismissal.  *See Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004) ("errors of state law are not cognizable in federal habeas courts").  To the extent Petitioner intended to raise Claim Two not as a separate claim but instead as a basis for excusing his failure to file a direct appeal and the resulting procedural default of Claims One, Three, Four, and Five, this issue shall be addressed below in the section discussing the Discovery Motions.

**B.  Claims One, Three, Four, and Five**

Nebraska Revised Statute § 71-1214 governs the procedure for appealing the Mental Health Board's findings and Commitment Order under SOCA, requiring Petitioner to appeal such an order to the state district court and, following the final order of the district court, to the Court of Appeals in accordance with the applicable procedure in criminal cases.  Of note, the state court procedure available to Petitioner under SOCA, while not a "criminal appeal and postconviction proceeding", *see* Neb. Rev. Stat. § 29-

3001, is "nearly identical state-court procedural due process." *Ivey*, 2020 WL 6158608, at *8; *Ivey*, 2008 WL 5392136, at *4.

Here, the Commitment Order was a final appealable order which had to be appealed to the state district court no later than 30 days after its entry,[10] and Petitioner was informed of this deadline prior to its expiration. *See* Filing No. 30-4 at 3. Petitioner, however, apparently elected to proceed pro se following entry of the Commitment Order, *id.*, and did not file an appeal to the state district court, instead pursing his 2018 State Habeas, which he filed in July of 2018, after the deadline for a direct appeal had passed. By failing to directly appeal the Commitment Order, Petitioner failed to exhaust the necessary state procedures to challenge his civil commitment. And, as the time to do so has passed, Petitioner is now barred from pursuing any direct appeal because any appeal would be dismissed as untimely.

While direct appeal is the most likely path to exhaustion, the filing of a state habeas may also provide a basis for exhaustion of claims under SOCA in limited circumstances.[11]

---

[10] *See Anderson v. Sacriste*, No. 8:19CV172, 2021 WL 83384, at *3 (D. Neb. Jan. 11, 2021) (explaining that under Nebraska law an appeal of a commitment order under SOCA must be brought 30 days following the entry of the order) (citing Neb. Rev. Stat. § 25-1912; *In re Interest of L.T.*, 886 N.W.2d 525, 529 (Neb. 2016); *In re Interest of D.I.*, No. A-18-237, 2018 WL 6839726, at *5 (Neb. Ct. App. Dec. 31, 2018) (explaining that § 71-1214 contemplates the right to directly appeal from a "treatment order" entered under § 71-1209 of SOCA as a final appealable order); *In re Interest of Saville*, 626 N.W.2d 644, 648 (Neb. Ct. App. 2001) (an adjudication by a mental health board that an individual is "a mentally ill dangerous person" under the Nebraska Mental Health Commitment Act ("MHCA") is a final and appealable order which has to be appealed within 30 days); *Herzog v. Schaub*, No. 8:09CV265, 2010 WL 3023954, at *2 (D. Neb. Feb. 25, 2010) (same); *Herzog v. Cheyenne Cnty. Mental Health Bd.*, No. 8:08CV255, 2009 WL 1028093, at *2 (D. Neb. Apr. 15, 2009) (same)).

[11] Individuals may also challenge their commitment after entry of an order of commitment by requesting a review hearing from the Mental Health Board and seeking "an order of discharge from commitment or a change in treatment ordered by the board." Neb. Rev. Stat. § 71-1219; *see also In re D.I.*, 799 N.W.2d 664, 669 (Neb. 2011); *Martinez v. Dawson*, No. A-19-696, 2020 WL 1487278, at *4 (Neb. Ct. App. Mar. 24, 2020). Such a request may be made after the "filing of a periodic report under section 71-1216," Neb. Rev. Stat. § 71-1219, which requires that periodic reports be "filed and served no less frequently than every ninety days for a period of one year following submission of the subject's individualized treatment plan and every six months thereafter." Neb. Rev. Stat. § 71-1216.

Specifically, a committed person may also "file, either personally or by counsel, petitions or applications for writs of habeas corpus for the purpose of challenging the legality of his or her custody or treatment." Neb. Rev. Stat. § 71-959(9); *see also* D.I. v. Gibson, 890 N.W.2d 506, 512 (Neb. 2017). In Petitioner's case he filed not one, but two state habeas petitions, however both were dismissed as impermissible collateral attacks on the Commitment Order. Specifically, the district court dismissed Petitioner's 2018 State Habeas, finding that it was an impermissible collateral attack on the Mental Health Board's legal findings and not an attack of the Mental Health Board's jurisdiction. Filing No. 28-1 at 18. Petitioner did not appeal. The district court also dismissed Petitioner's 2019 State Habeas, finding that, although Petitioner attempted to frame his challenge to the Mental Health Board's April 2018 Commitment Order as a jurisdictional attack of a void judgment, his 2019 State Habeas, just like his 2018 State Habeas, was instead a collateral attack on the findings of the Mental Health Board and therefore could not proceed in habeas. *See* Filing No. 28-2 at 27–29. Petitioner appealed to the state court of appeals, and the appellate court affirmed the district court's decision. Filing No. 28-8.

As noted by the state courts when addressing both the 2018 and 2019 State Habeas, in Nebraska habeas cannot be used as a collateral attack on the findings made in a jurisdictionally valid judgment of commitment. *Sanders v. Frakes*, 888 N.W.2d 514, 520 (Neb. 2016) (emphasis added) (explaining that a collateral attack on a judgment is

---

If Petitioner seeks a review hearing after the filing of his next periodic report, he must then follow the appeal procedures discussed in this Memorandum and Order, including appealing to the state district court, and then to the Nebraska Court of Appeals and Nebraska Supreme Court. After doing so, Petitioner may seek habeas corpus relief in this Court to address those findings. *See* Anderson v. Sacriste, No. 8:19CV172, 2021 WL 83384, at *3 (D. Neb. Jan. 11, 2021). However, Petitioner does not contend a review hearing took place, and instead contends he was denied a review hearing as guaranteed to him via Nebraska law.

where the judgment is attacked in a way other than a proceeding in the original action to have it vacated, reversed, or modified, or a proceeding in equity to prevent its enforcement); *Gonzalez v. Gage*, 861 N.W.2d 457, 461 (Neb. 2015).  Therefore, a writ of habeas corpus will not lie upon the ground of mere errors and irregularities in the judgment, nor may it be used as a substitute for an appeal.  *Sanders*, 888 N.W.2d at 520; *see also Flora v. Escudero*, 526 N.W.2d 643 (Neb. 1995) (a writ of habeas corpus ordinarily will not be granted where another adequate remedy exists).

As Petitioner was unable to present the merits of Claims One, Three, Four, and Five to the state courts under the only avenues available to him, they are not only unexhausted but procedurally defaulted.  Therefore, unless Petitioner is able to "excuse" his procedural defaults, these claims must be dismissed as outside the scope of this Court's review.  The Court shall address the ability to excuse procedural default in the following section addressing the Discovery Motions.

## C.  The Discovery Motions

Petitioner moves this Court for an evidentiary hearing on his claims "concerning lack of jurisdictional authority and constitutional errors of fundamental miscarriage of justice [and] the unlawful incarceration of the Petitioner[,] who is actually innocent and is not subject to [SOCA]."  Filing No. 80 at 1.  Petitioner seeks to "present evidence that he is not a dangerous sex offender as defined under Neb. Rev. St[at]. 83-174.01(5) and is not committable as an exhibitionist."  *Id.* at 8; *see also* Filing No. 91 at 3.

As noted above, Claims One, Three, Four, and Five are procedurally defaulted as they were not brought on direct appeal, and, to the extent any of the claims were brought in either of Petitioner's state habeas proceedings, they were never addressed on their

merits pursuant to Nebraska state habeas law.  Also as previously discussed, Petitioner's arguments in Claim Two are either non-cognizable as issues of state law or relate to issues which occurred after the Commitment Order and are therefore not appropriately raised in the Petition.  However, to the extent Petitioner raised Claim Two not as an independent claim but instead to excuse the procedural defaults of his other claims or to otherwise support discovery motions such as the ones pending before this Court, those arguments shall be considered here.  Though it is unclear precisely which claims Petitioner intended the Discovery Motions to apply to, ultimately, Petitioner is not entitled to an evidentiary hearing on any of his claims as their procedural default is unexcused.

As an initial matter, Petitioner argues that he is entitled to an evidentiary hearing in this Court, citing to the United States Supreme Court's holding in *Townsend v. Sain*, 372 U.S. 293, 313 (1963), Filing No. 80 at 2, but Petitioner's reliance on *Sain* is misplaced as the precise section on which Petitioner relies was overruled by the Court in *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Instead, the new rule, as announced by *Tamayo-Reyes*, requires a Petitioner who has failed to develop the record to prove a claim in the state courts to "show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure." *Id.* at 11.  And, in the event a Petitioner cannot meet the cause and prejudice requirement, "[a] habeas petitioner's failure to develop a claim in state-court proceedings will be excused and a hearing mandated if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citing *Mayes v. Gibson*, 210 F.3d 1284, 1287 (C.A.10 2000)).  However, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Before analyzing whether good cause has been shown to facilitate the development of new evidence, a district court must first consider the requirements set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *Shoop v. Twyford*, 596 U.S. 811, 821 (2022); *see also Marcyniuk v. Payne*, 39 F.4th 988, 999–1000 (8th Cir. 2022) (affirming district court's denial of request for discovery and evidentiary hearing where the petitioner could not demonstrate either that § 2254(e)(2) did not apply to him or that he could satisfy § 2254(e)(2)'s requirements).

AEDPA directs how federal courts must consider petitions for habeas relief under § 2254 and generally limits a federal habeas court's review of the evidence and corresponding record to that which was developed in the state court.  *Twyford*, 596 U.S. at 819.  Therefore, where a claim was adjudicated on the merits in state court, pursuant to § 2254(d)(1) and the United States Supreme Court's holding in *Cullen v. Pinholster*, further evidentiary development of the claim in federal court is barred, limiting review of the claim "to the record that was before the state court that adjudicated the claim on the merits."  563 U.S. 170, 181 (2011).

Conversely, as here, where a claim was not adjudicated on the merits in state court because a petitioner failed to raise it before the state courts while state-court remedies

were available, that claim is procedurally defaulted.  Factual development of the merits of the procedurally defaulted claim in the federal courts usually cannot occur unless the prisoner can satisfy certain stringent requirements delineated at § 2254(e)(2) as follows:

> (A)    the claim relies on - -
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2); *see also* *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005).

Petitioner contends that the Mental Health Board "lacked the jurisdictional authority" to enter the Commitment Order and concludes that he is able to meet the requirements of 28 U.S.C. § 2254(e)(1)[12] and (2), arguing that upon granting of an evidentiary hearing he will be able to establish "by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." Filing No. 91 at 3.  Petitioner, however, wholly fails to directly address § 2254(e)(2)(A)'s new law or due diligence requirement.

While Petitioner assures this Court he is able to meet the requirements of § 2254(e)(2), clearly he cannot.  First, § 2254(e)(2) requires a showing by a federal habeas petitioner that a claim relies upon a new, retroactive law or that with due diligence he

---

[12] While Petitioner cites to § 2254(e)(1) as a basis for obtaining an evidentiary hearing, § 2254(e)(1) simply requires this Court to give deference to determinations of factual issues made by a state court as presumptively correct and requires a habeas petitioner to rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  As such, § 2254(e)(1) is not an alternative basis for obtaining an evidentiary hearing.

could not have previously discovered the relevant facts *and* a showing by clear and convincing evidence that, in the absence of the constitutional error, no reasonable factfinder would have found him guilty. *Id*. Petitioner does not advance any argument that a new rule of constitutional law applies to any of his claims or that he was previously unaware of the evidence he now seeks to present. Petitioner seeks: (1) the testimony of Dr. Stephanie Bruhn to testify that Petitioner does not meet the definition of a dangerous sex offender under Neb. Rev. Stat. § 83-174.01, (2) the testimony of Tabetha Waggoner to authenticate the June 28, 2018, treatment plan which "admits" that Petitioner's other sexual offenses of lewd conduct and indecent exposure do not meet the criteria for commitment under SOCA, and (3) review of Dr. Melvin's affidavit which Petitioner contends improperly qualified Petitioner as a dangerous sex offender based on four instances of lewd conduct and indecent exposure which occurred in Nebraska between 2005 and 2013. Filing No. 91 at 1–2. This "evidence" is far from new. Petitioner appears to seek opinion testimony that contradicts other evidence used to support the Commitment Order. Such evidence could have been obtained even before entry of the Commitment Order. As such Petitioner is unable to satisfy § 2254(e)(2)(A)(ii).

In limited circumstances, the United State Supreme Court has found that § 2254(e)(2) does not apply, allowing factual development of otherwise procedurally defaulted claims, where the Petitioner was not "at fault" for failing to develop those claims in state court. *See Shinn v. Ramirez*, 596 U.S. 366 (2022); *Williams v. Taylor*, 529 U.S. 362 (2000). In this context, to not be "at fault" for the failure to develop a claim, a Petitioner must establish that he exercised diligence in attempting to develop the defaulted claim (or claims) but, through no fault of his own, was unable to do so. "If there has been no

lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause." *Williams*, 529 U.S. at 437.

"Diligence in this context 'depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claims in state court; it does not depend . . . upon whether those efforts could have been successful.'" *Marcyniuk*, 39 F.4th at 999 (quoting *Williams*, 529 U.S. at 435)). "[A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." *Williams*, 529 U.S. at 432. Therefore, when a claim goes undeveloped in state court due to something other than the neglect of a federal habeas petitioner, such as the prosecution's concealment of facts or the inability to develop the claim through utilization of the state process, then "§ 2254(e)(2)'s restriction on evidentiary hearings would not apply." *Thompson v. Lumpkin*, --- U.S. ----, 141 S. Ct. 977, 977 (2021) (mem.) (Kagan, J., joined by Breyer & Sotomayor, JJ., concurring in denial of certiorari) (quoting *Williams*, 529 U.S. at 434). As such, courts post-*Shinn* have considered allowing evidentiary development of procedurally defaulted claims in federal proceedings where a federal petitioner was not "at fault" for the failure to develop his claims, either because he was diligent in his efforts to develop a claim in the state courts but was unable to do so or because he was otherwise precluded from doing so through no fault of his own. *See e.g. Powell v. Hudson*, No. CV 13-357-GBW, 2024 WL 5262988, at *3 (D. Del. Dec. 31, 2024); *Hubbell v. Reagle*, No. 1:20-CV-02217, 2023 WL 3886372, at *6 (S.D. Ind. June 8, 2023); *Wholaver v. Wetzel*, No. 1:11-CV-0164, 2022 WL 17082094, at *4 (M.D. Pa. Nov. 18, 2022); *Taylor v. Valentine*, No. 118-CV-00182, 2022

WL 21852199, at *3 (W.D. Ky. July 27, 2022), *report and recommendation adopted*, No. 118-CV-00182, 2023 WL 8788970 (W.D. Ky. June 1, 2023).  Finally, of note, *in the usual case* diligence requires that the prisoner, "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437 (emphasis added).

Here, to the extent this Court construes his statements in Claim Two as an allegation that Petitioner attempted some form of due diligence in prosecuting his direct appeal but was somehow unable to do so, clearly only his claim that the Mental Health Board refused to provide him with a certified hearing transcript (and that refusal precluded him from filing his direct appeal) would provide any basis for such a finding.   However, it is unclear to this Court (and Petitioner does not explain) how the failure to provide Petitioner with hearing transcripts would waylay his ability to file a direct appeal.  The alleged failure to provide post-commitment review hearings, also set forth in Claim Two, would have no bearing on Petitioner's ability to file a direct appeal, which in Petitioner's case, as previously discussed, was the only avenue for him to attack the findings of the Mental Health Board in the Commitment Order and occurred before any post-commitment hearings would have taken place.

While Petitioner's contention that he was not appointed post-commitment counsel may have hampered his ability to file a direct appeal, it is unclear whether Petitioner is referring to the denial of counsel to file a direct appeal (as opposed to any other post-commitment proceeding) or whether Petitioner ever sought counsel for his direct appeal (which is not supported by the records).  And, more importantly, it is unclear how the

failure to appoint counsel at any time prevented him from filing any direct appeal.[13] As Petitioner appears never to have attempted to file a direct appeal, let alone obtain an evidentiary hearing to obtain the evidence he now seeks, this Court cannot find that Petitioner acted with any diligence.

Petitioner also argues that no direct appeal was filed because his counsel failed to file an appeal. Filing No. 13 at 2. If Petitioner intends to allege his counsel was ineffective for failing to file his direct appeal, that failure to file could excuse his procedural default. *See Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002) (explaining that ineffective assistance of counsel in such circumstances "may be cause excusing a procedural default") (citing *Murray*, 477 U.S. at 491–92). "However, in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." *Id.* (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–53 (2000); *Tokar v. Bowersox*, 198 F.3d 1039, 1051 n. 13 (8th Cir.1999)).

Petitioner never raised such a claim before the state courts, either in the context of filing an untimely direct appeal or even in his ill-fated state habeas petitions. As such, this Court finds that Petitioner's allegation of ineffective assistance of counsel also does not excuse any procedural default as he failed to raise such a claim to the state courts at any time.

Ultimately, there is no indication in the record that Petitioner did not know of all of the requested evidence in his Discovery Motions much earlier than the filing of his Petition

---

[13] While not germane to this issue, it appears that Petitioner has been appointed counsel since the Commitment Order was entered and that Petitioner sought to terminate the representation of his post-commitment appointed counsel in 2022 proceedings. *See* Filing No. 68-10. It also appears that, despite Petitioner's contentions, review hearings have been held. *See* Filing No. 68-16.

in this case, if not since the Commitment Order was entered. And Petitioner does not address why he could not have obtained such evidence earlier. Because Petitioner is clearly at fault for failing to develop his claims with the evidence requested, § 2254(e)(2)(A) applies. As Petitioner failed to meet either prong of § 2254(e)(2)(A), there is no need to consider if the facts underlying the Petitioner's claims would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

For these reasons, Petitioner's Discovery Motions are denied. And, as there is no basis for excusing the procedural default, or further developing the merits, of any of Petitioner's claims, review of the merits of Petitioner's claims cannot proceed before this Court.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court has applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS THERFORE ORDERED that

1.    The Motions for Status, Filing Nos. 92 and 93, Case No. 8:20CV271; Filing Nos. 90 and 91, Case No. 8:20CV272, are granted consistent with this Memorandum and Order.

2.      The Discovery Motions, Filing Nos. 80 and 89, Case No. 8:20CV271; Filing Nos. 78 and 87, Case No. 8:20CV272, are denied.

3.      The Amended Petition for Writ of Habeas Corpus, Filing No. 4, Filing No. 13, Filing No. 14, Case No. 8:20CV271; Filing No. 15, Case No. 8:20CV272, and any amendments or supplements thereto, is denied and dismissed with prejudice. No certificate of appealability has been or will be issued.

4.      Judgment will be issued by separate document closing these consolidated cases.

Dated this 20th day of March, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court